**C.G., By and Through her parents and next friends, MR. AND MRS. G.**

v.

**NEW HAVEN BOARD OF EDUCATION.**

**No. 3:96CV1402 (RNC).**

United States District Court,
D. Connecticut.

Sept. 29, 1997.

David C. Shaw, Hartford, CT, for Plaintiff.

Lubbie Harper, Jr., Harper Law Firm, Linda Doreen Babcock, New Haven, CT, for Defendants.

## ORDER

CHATIGNY, District Judge.

After review and over objection, the Magistrate Judge's recommended ruling is hereby approved and adopted.

So Ordered.

### RECOMMENDED RULING ON PENDING MOTIONS

MARTINEZ, United States Magistrate Judge.

This is an action for reimbursement of attorney's fees and costs incurred during administrative proceedings initiated under the Individuals With Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"). Currently pending before the court is the plaintiff's motion for summary judgment in which the plaintiff asserts that as a "prevailing party" she is entitled to costs and attorney's fees pursuant to 20 U.S.C. § 1415(e)(4)(B). Also pending is the plaintiff's Motion for Attorney's Fees for Time Spent After December 16, 1996. For the reasons stated below, the court recommends that the plaintiff's motion for summary judgment (doc. # 11) and the plaintiff's motion for attorney's fees (doc. # 21) be GRANTED.

## I. UNDISPUTED FACTS

Based upon the submissions of the parties, the court finds the following facts to be undisputed for purposes of the motion for summary judgment and the motion for attorney's fees.

The plaintiff, C.G., is a three year old child, born on October 22, 1992, who lives with her parents in New Haven, Connecticut. As a result of an intracranial hemorrhage sustained at birth, C. has significant motor impairments, including impairment of her ability to communicate. C. is also legally blind. C. has been identified by the New Haven Board of Education as a child in need of special education under the IDEA.

Beginning in May or June 1993, C. participated in the Early Connections Program sponsored by the State of Connecticut Department of Mental Retardation. The Early Connections Program is the Connecticut state program through which children with disabilities receive services pursuant to the IDEA from birth to three years of age. In this program, C. received special education and related services, including two hours of physical therapy per week, two hours of occupational therapy per week, and one hour of speech and language services and special education support within a typical preschool setting. C. made progress in all areas in this program. These services continued until C. reached the age of three on October 22, 1995.

Responsibility for providing special education and related services shifts from the State of Connecticut Department of Mental Retardation to the local school board when a disabled child reaches the age of three. Preparing to assume its responsibility for providing special education and related services to C., the New Haven Board of Education ("Board") convened a Planning and Placement Team (PPT) meeting on March 23, 1995. At that meeting, the PPT recommended that C. be observed and evaluated. The PPT also recommended that C.'s parents consider five preschool special education programs offered by the Board as possible special education placements for C. C.'s parents visited all but one of these suggested placements and found that they would offer little or no opportunity for C. to interact with nondisabled children. The parents were unable to reach the fifth program suggested by the Board because telephone calls made by C.'s mother to that program were not returned.

Pursuant to the PPT's recommendation, an Early Childhood Assessment Team ("ECAT") comprised of a school social worker, speech and language pathologist, school psychologist and preschool special education teacher, evaluated C. on May 19, 1995. The evaluation was conducted in a setting that was unfamiliar to C. Prior to the evaluation, members of the ECAT did not take C.'s history or speak with C.'s therapists. At the time of the evaluation, C. had not yet received her eyeglasses, although she was legally blind without them. Based on their evaluation, the ECAT concluded that C. functioned at a 6 month old level with scattered skills to the 12 month level.

On June 19, 1995, a PPT meeting was held to discuss the ECAT's assessment of C. The ECAT members, Board administrators and C.'s parents attended. Despite C.'s parents' direct request for a copy of the ECAT's assessment report, the Board refused to give them a copy of the report.

Members of the PPT had no experience in placing children with disabilities as severe as C.'s in regular classes or preschool settings. There was no discussion during the PPT meeting as to whether C. could attend a typical preschool setting with supplemental aids or services or the maximum extent to which C. could be educated appropriately with children without disabilities.

At the June 19, 1995 meeting, the PPT recommended, based upon the ECAT evaluation, that C. be placed in a full-time special education program. It also recommended that C.'s physical and occupational therapy be reduced from two hours to one hour per week.

C.'s parents rejected the PPT's placement recommendation because they believed that C. needed to be with nondisabled children so that she could model them. They wanted C. to be placed in a private preschool with non-disabled children. The Board suggested that the ECAT reevaluate C. C.'s parents requested an independent evaluation of C., but the Board rejected their request.

In July 1995, C.'s parents enrolled C. in Creating Kids Childcare Center, a private preschool.

On September 7, 1995, C.'s parents requested an administrative hearing pursuant to 20 U.S.C. § 1415. In their request, the parents represented that the hearing was requested: (1) to challenge the Board's refusal to place C. in a typical preschool with appropriate supplementary aids and services, rather than a segregated, disabled-only preschool operated by the Board; (2) to challenge the Board's decision to reduce the amount of therapy for C.; and (3) to obtain reimbursement for an independent educational evaluation of C. As of the date that the hearing was requested, the Board had not yet scheduled a PPT meeting to discuss alternative placements for C.

The parents requested that the Board continue C.'s therapy while the hearing was pending, but the Board refused to do so voluntarily. Therapy was terminated until the hearing officer entered an interim order that therapy be continued. As a result of this interruption in services, C. missed twenty-six hours of therapy.

The hearing was held over the course of eight days in November and December of 1995, and January and February of 1996. The hearing officer found that the special education programs operated by the Board would not provide C. with education with nondisabled children to the maximum appropriate extent as required under IDEA, 20 U.S.C. § 1412(5)(B). Rather, the hearing officer found that private preschool placement met the standards set out in 20 U.S.C. § 1412(5)(B) and that the appropriate placement for C. under *Board of Educ. v. Rowley*, 458 U.S. 176, 202, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982), was at the Creating Kids Childcare Center, the private preschool where C. was currently enrolled. The hearing officer found that C. was "thriving" at Creating Kids, that she had maximum opportunity to interact with nondisabled children in that program, and that transferring her to the Board's program would be disruptive and harmful. The hearing officer ordered the Board to pay C.'s tuition at the Creating Kids Childcare Center retroactive to November 1, 1995, the first month after C. turned three years old.

The hearing officer concluded that the Board violated 20 U.S.C. § 1412(5)(B) by not discussing or offering a properly supported regular education or preschool placement for C. and by not documenting an adequate basis for recommending that she be sent to a segregated setting. The hearing officer found that the evaluation of C. conducted by the ECAT was flawed in many respects and noted that, even as late as the administrative hearings when the ECAT members were aware that C. was legally blind without her eyeglasses, they nevertheless persisted in defending their evaluation of C. as being valid and reliable.

Without deciding whether the Board had made a specific placement recommendation

prior to the administrative hearing, the hearing officer found that the Board could not have developed an appropriate program to meet the congressional mainstreaming presumption prior to C.'s third birthday on October 22, 1995, given the fact that only segregated placements were offered prior to the hearing and that the Board's personnel had no experience in placing a child as disabled as C. in a mainstream program.

The hearing officer also found that the Board failed to conduct appropriate transition planning to avoid an interruption in the services provided to C. To compensate for the interruption of services which did occur, the hearing officer ordered that the Board provide C. with an additional twenty-six hours of therapy. The hearing officer also concluded, based upon the PPT having altered its recommendation, that the appropriate level of therapy for C. was two hours per week for physical therapy, two hours per week of occupational therapy, and two and one half hours per week of speech therapy.

In the final decision, the hearing officer recognized that the Board had agreed to reimburse C.'s parents for the independent evaluation of C. that had been conducted after the June 19, 1995 PPT meeting, and ordered that such reimbursement be made.

Finally, the hearing officer commended the attorneys for both parties, noting that the presentation by the plaintiff's attorney was "absolutely remarkable."

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the opposing party must come forward with specific

evidence which demonstrates that there is a genuine issue of material fact for trial. *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984); *Anderson v. Liberty Lobby, Inc.*, 477 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202(1986). In determining whether or not a fact is material, the court will examine the applicable substantive law as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

### B. Discussion

#### 1. "Prevailing Party"

The IDEA provides that "in any action or proceeding under this subsection, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents or guardians of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415(e)(4)(B). The plaintiff argues that she is entitled to the attorney's fees and costs she incurred in connection with the administrative hearing because she is a prevailing party under the IDEA. The Board opposes the plaintiff's motion for summary judgment on the ground that material issues of fact exist as to whether the plaintiff is a prevailing party.

The legal standard for determining "prevailing party" status in an IDEA attorney's fees action is the same of that governing the award of attorney's fees in civil rights litigation pursuant to 42 U.S.C. § 1988. *See Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 (5th Cir.1990) (citing the legislative history of IDEA); *Barbara R. v. Tirozzi*, 665 F.Supp. 141, 145 (D.Conn.1987). Under this standard, a party may be deemed "prevailing" if the party succeeds on "any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *accord Heldman v. Sobol*, 846 F.Supp. 285, 288 (S.D.N.Y.1994). The Supreme Court has explained that, in making this determination, a court is to consider whether the plaintiff (1) obtained relief on a significant claim in litigation, (2) that effected a material alteration in the parties' legal

relationship and (3) that is not merely technical or *de minimis* in nature. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989).

Thus, to determine whether the plaintiff is a prevailing party within the meaning of the IDEA, the court must evaluate the undisputed facts of this action in light of the factors set forth in *Texas State Teachers*. First, the undisputed facts establish that the hearing officer ruled in C.'s favor on eight of the ten issues raised at the hearing.[1] Notwithstanding this success, the Board contends that genuine issues of material fact exist as to whether there is a sufficient causal connection between the relief obtained and the plaintiff's exercise of due process rights for the plaintiff to be a prevailing party under the IDEA.[2] Specifically, the Board argues that a genuine issue of fact exists as to whether it had recommended any particular program for C. prior to the commencement of the administrative proceedings. The Board argues that, because no specific recommendation had yet been made, it is possible that the Board might have voluntarily recommended that C. remain at the Creating Kids Childcare Center.

The Board's argument is without merit. The undisputed facts establish that the only suggestions that the Board had made as possible placements for C. prior to the administrative hearing were the five special education placements operated by the Board and which the hearing officer found to be inappropriate placements for C. There had been no discussion during the PPT meeting in June 1995 as to whether C. could attend a typical preschool setting with supplementary aids or services, or the maximum extent to which C. could be educated appropriately with children without disabilities. Moreover, the PPT members had never recommended that a child as severely disabled as C. attend a typical class or preschool. In addition, the ECAT members who evaluated C. persisted in defending their evaluation as being reliable and valid even as late as the administrative hearing when they knew that C. was legally blind without her eyeglasses. As of the date that C.'s parents requested the administrative hearing, the Board had not scheduled a PPT meeting to discuss alternative placements for C. These facts demonstrate that the Board's argument that it might have voluntarily recommended placing

1. As set forth in Part I, Undisputed Facts, *supra,* the hearing officer ruled in C.'s favor on the following issues: (1) that placing C. in any of the Board's programs would clearly contravene the Congressional mandate in IDEA that, to the maximum extent appropriate, children with disabilities must be educated with children who are not disabled; (2) that placing C. in the Board's programs would clearly contravene the federal requirement under IDEA that children with disabilities not be removed from regular education environments unless the nature and severity of the disability is such that education in regular classes cannot be achieved; (3) that C.'s placement in Creating Kids Childcare Center is placement in the least restrictive environment for C. for the time being and that this placement for C. continue as a twelve month full day program until C. begins kindergarten; (4) that the Board failed to conduct appropriate transition planning so that services to C. would not be interrupted when she turned three; (5) that the Board shall reimburse C.'s parents for the independent evaluation conducted by Linda Rammler; (6) that the Board shall provide twenty-six hours of therapy to C. as compensatory education; (7) that the therapy provided by the Board continue on a twelve month basis at the rate of two hours of physical therapy, two hours of occupational ther-

apy, and two and one-half hours of speech and language therapy per week, to be integrated into the routine at Creating Kids Childcare Center; and (8) that the Board pay for the tuition for Creating Kids retroactive to November 1, 1995.

2. The court notes that the parties had previously entered into a Stipulation Regarding Scheduling of Proceedings dated October 25, 1996 (doc. # 9), which was approved by the court (Chatigny, J.) on November 4, 1996. In that stipulation, signed by counsel for the defendant, the parties represented that they agreed "that the case may be resolved in a Motion for Summary Judgment in light of the Supreme Court's pronouncement in *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) that '[a] request for attorney's fees should not result in a second major litigation.'" The defendant does not refer to the stipulation in its papers but obviously seeks to withdraw from the stipulation at this time. The plaintiff, however, seeks to have the stipulation enforced. Because the court is able to recommend that summary judgment be granted based upon the undisputed facts, the court is not required to reach the issue of whether the October 25, 1996 stipulation precludes the defendant from arguing that material facts are in dispute.

C. at the Creating Kids Childcare Center is without merit and unsupported by the record.

More important for the purposes of this motion for summary judgment, however, is that the Board's suggestion of this "possibility" does not satisfy the Board's burden of demonstrating, on the basis of specific facts, that genuine issues of fact exist to be tried. "Justice could almost always be delayed, if not perverted, if parties are allowed to avoid summary judgment by alleging possibilities instead of facts." *Leslie Fay, Inc. v. Rich*, 478 F.Supp. 1109, 1114 (S.D.N.Y.1979). Because the Board has presented no evidence on which this court could find that there exists a genuine issue of fact as to whether the Board would have voluntarily recommended in September 1995 that C. be placed at the Creating Kids Childcare Center, the Board's argument is insufficient to preclude summary judgment for the plaintiff on this ground. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984) (where party moving for summary judgment has met its burden, opposing party must submit affidavits or other evidence to controvert material facts set forth by moving party); *Nestle Co., Inc. v. Chester's Mkt., Inc.*, 571 F.Supp. 763, 769 (D.Conn.1983) (once moving party has met its burden, summary judgment will be granted unless the party opposing the motion offers evidence that could be presented at trial demonstrating that a genuine issue as to a material fact exists), *vacated on other grounds*, 609 F.Supp. 588 (D.Conn.1985).

The Board also argues that the plaintiff is not a prevailing party because the hearing officer ruled against C. on two issues raised at the administrative hearing. Specifically, the hearing officer declined to order an independent consultant or part-time paraprofessional for C. and deferred to the Board with respect to providing C. with ongoing assistive technology. Again, the Board's argument is without merit. Notwithstanding the fact that the plaintiff did not obtain all of the relief she sought, there can be no genuine dispute that C. obtained favorable results on many significant issues in the administrative hearing.

Finally, the Board argues that genuine issues of material fact exist as to whether the causal connection between the administrative hearing and relief obtained on two specific issues is sufficient for the plaintiff to be considered prevailing parties under the IDEA. Specifically, the Board takes issue with the hearing officer's order that the parents be reimbursed for the independent educational evaluation of C. and that C.'s therapy be increased from the original recommendation of the Board. Although this relief was set forth in the hearing officer's final decision and order, the Board argues that it was actually obtained, not as the result of the hearing, but through the PPT process or by voluntary action of the Board. *See Koster v. Perales*, 903 F.2d 131, 135 (2d Cir.1990) (to justify fee award, the prevailing party must show that lawsuit was a catalytic, necessary, or substantial factor in attaining the relief). The plaintiff contends, however, that any change in the Board's position was the result of the parents' request for an administrative proceeding. Thus, the parties dispute whether the administrative hearing was a substantial factor in obtaining the relief of reimbursement of the evaluation fee and increased therapy services. Notwithstanding this dispute, the court finds that this fact is not material to the determination of whether the plaintiff is a prevailing party under the IDEA in light of the many other significant issues on which the plaintiff obtained relief and the benefits she achieved as a result of instituting the administrative proceeding. Disregarding the relief obtained on the two issues on which the Board contends that it voluntarily changed its position, there can nevertheless be no genuine dispute that C. succeeded on "any significant issue in litigation which achieves some of the benefit sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Accordingly, the court holds that the plaintiff has satisfied the first factor set forth in *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989).

The second factor set forth in *Texas State Teachers*, that the relief obtained materially alter the parties' legal relationship, is also

satisfied. C. achieved a material alteration in the legal relationship between herself and the Board in that she has obtained an enforceable order that enables her to receive educational services not previously made available to her by the Board.

■ The fact that the parties resolved one or more issues through voluntary agreement rather than through adjudication does not preclude the plaintiff from claiming attorney's fees as a prevailing party under IDEA. *Barlow–Gresham Union High Sch. Dist. No. 2 v. Mitchell,* 940 F.2d 1280, 1284 (9th Cir. 1991); *Barbara R. v. Tirozzi,* 665 F.Supp. 141, 145 (D.Conn.1987). "[F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980) (quoting S.Rep. No. 94–1011, p. 5 (1976), U.S.Code Cong. & Admin. News 1976, pp. 5908, 5912 (discussing 42 U.S.C. § 1988)).

Finally, C. has also satisfied the third factor set forth in *Texas State Teachers* in that the relief she obtained is neither technical nor *de minimis.* The placement and services that the plaintiff will now enjoy as a result of the decision in the administrative proceeding is significantly different than that which the Board had previously recommended. The relief the plaintiff obtained is not *de minimis.*

Thus, the court finds that the plaintiff is a "prevailing party" because her use of procedural rights under the IDEA led directly to her achieving the relief she was seeking, and but for the use of those procedural rights, she would not have achieved that relief.

### 2. *Attorney's Fees and Costs*

■ Once a plaintiff meets the prevailing party threshold, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The plaintiff argues that she is entitled to the total amount of all attorney's fees and costs.

She argues that based upon the prevailing market rate in the relevant community, her attorney, David C. Shaw, should be compensated at the hourly rate of $250. Multiplying this rate to the time of 231.7 hours which Attorney Shaw has spent on this case through December 16, 1996,[3] plus $1,428.79 in costs, the total award sought by the plaintiff in her motion for summary judgment is $59,353.79.

■ The Board contends that the attorney's fees claimed by the plaintiff should be reduced for the various following reasons: (1) C.'s success in this action, if any, was limited; (2) the plaintiff unreasonably protracted the final resolution of this case by failing to visit one of five programs identified by the Board as a possible school option for C. or by requesting the administrative hearing before independent evaluations were completed; (3) Attorney Shaw billed two hours for attending a PPT meeting which he did not actually attend; (4) in Attorney Shaw's bills for his attendance at the administrative hearings, he billed 14 hours and 15 minutes in excess of the actual time in which the hearings were conducted; (5) the plaintiff is not entitled to the $1,236.39 fee of expert witness Linda Rammler; and (6) the hourly fee charged by Attorney Shaw is excessive. The court will address each of these arguments in turn.

First, the Board's argument that attorney's fees should be reduced because the plaintiff's success was limited is without merit. Far from limited, the plaintiff's success in this action was sweeping in that she obtained an order for all of the relief for which the administrative hearing was requested, plus the majority of all other issues raised at the hearing. No reduction in fees is therefore warranted based on the extent of the plaintiff's success.

Second, the Board's argument that the plaintiff unreasonably protracted the final resolution of this case is unsupported by the record. The Board contends that C.'s parents protracted the resolution of this case by

---

**3.** The fees sought by plaintiff properly include fees for work done in connection with her claim for attorney's fees. *See Gagne v. Maher,* 594 F.2d 336, 343 (2d Cir.1979) *aff'd* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

failing to visit one of five programs identified by the Board as a possible placement for C. The record before the court indicates that C.'s mother was unable to visit the fifth program only because her telephone calls to this program were not returned. Moreover, the hearing officer determined that these programs would not provide C. with education with nondisabled children to the maximum appropriate extent as required pursuant to 20 U.S.C. § 1412(5)(B). Finally, the Board has offered no evidence to show how the parents' inability to visit one of the five programs caused any protraction of this case. Accordingly, the record before the court does not warrant a reduction of fees on this ground.

The Board also contends that C.'s parents protracted the resolution of this case by requesting an administrative hearing before independent evaluations were completed. Again, the Board has offered no evidence to show that the timing of the parents' request for a hearing resulted in any protraction of this case that would warrant a reduction in the fees claimed.

■ The Board's third argument for a reduction in the attorney's fees is that Attorney Shaw billed for two hours spent at the PPT meeting on February 5, 1996, when he did not actually attend the meeting. The plaintiff does not dispute the fact that Attorney Shaw did not actually attend the meeting. The plaintiff's mother attests, however, that Attorney Shaw drove to New Haven at the request of C.'s mother because she had been informed that the Board's attorney would be attending the meeting. Because the Board's attorney left the meeting when asked to do so by C.'s mother, Attorney Shaw also remained outside the meeting. Attorney Shaw did not return directly to Hartford however but stayed nearby and advised the parents during breaks in the meeting about issues raised at the meeting. The court concludes that these facts present no basis for reducing the attorney's fees claimed by the plaintiff.

■ The Board's fourth argument for a reduction in fees is that the time which Attorney Shaw billed for his attendance at the administrative hearings is greater than the actual length of time of the hearings. Attor-

ney Shaw has explained in his affidavit, however, that the time he billed for his attendance at the hearings included travel time and time spent consulting with and advising his clients prior to and after each hearing. Such time is compensable. *See, e.g., Gonzalez v. Town of Stratford,* 830 F.Supp. 111, 115 (D.Conn.1992)(compensation ordered for counsel's travel time)(Burns, J .).

■ Fifth, the Board argues that the plaintiff is not entitled to reimbursement of $1,236.39 for the fee of an expert witness who testified at the hearing. The law is contrary to the Board's position. Expert witness fees are reimbursable under IDEA. *See April S. v. Board of Educ., City of Norwalk,* No. 2:92CV00976 (PCD) (D.Conn. January 29, 1996); *Pratt v. Regional Sch. No. 15,* No. 2:91CV1205 (JAC) (D.Conn. October 27, 1993); *Simon F. and Jacob F. v. Trumbull Bd. of Educ.,* No. 3:93CV1132 (TFGD) (D.Conn.1995).

Finally, the Board contends that Attorney Shaw's hourly fee of $250 is excessive. Fee awards "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)(discussing fee awards under 42 U.S.C. § 1988). In support of her claim for attorney's fees, the plaintiff has submitted an affidavit from John J. Yavis, Jr., Esq., a partner in the law firm of Murtha, Cullina, Richter and Pinney since 1966. Based on his experience and knowledge of hourly rates charged to clients for legal services in Connecticut, Attorney Yavis attests that it is his opinion that "the prevailing market rate charged by law firms in Connecticut for litigation in federal court or at administrative hearings by a partner with twenty-two years experience is $250 per hour."

The Board contests the amount of this hourly rate and has offered the affidavit testimony of Attorneys Jeffrey C. Pingpank, Marsha Belman Moses, and Frederick Dorsey. The affidavit testimony of these three attorneys estimates the prevailing market rates for litigating special education cases to be between $110 to $175 per hour. However, both Attorneys Pingpank and Moses repre-

sent boards of education, not plaintiffs, in such cases. Not one of the attorneys state that they are familiar with the rates charged by attorneys representing plaintiffs in special education cases and none offer opinions as to the market rate for an attorney with Attorney Shaw's experience and expertise representing plaintiffs in special education cases.

Based on the record before the court, the court finds that a rate of $250 per hour is reasonable for an attorney in the relevant community with the skill and experience of Attorney Shaw. *See, Ruben R. v. Hartford Bd. of Educ.*, No. 3:93CV1695 (AWT) (D.Conn. August 28, 1996) ($230 per hour rate set for Attorney Shaw by Judge Thompson); *Karan v. Adam*, No. H:90CV135 (JAC) (D.Conn. May 27, 1993) ($230 hourly rate for Attorney Shaw set by Judge Cabranes); *G .R. v. Regional Sch. Dist. No. 15*, No. 3:95CV2173 (AHN) (D.Conn. December 26, 1996) ($225 per hour rate set for Attorney Shaw by Judge Nevas); *See also Gyadu v. Giordano*, No. 3:94CV1144 (D.Conn. March 14, 1997) (Judge Arterton finds that "the hourly rate of $250 is justified in this District for counsel of similar length [22 years] of trial practice."). In setting this rate of compensation for Attorney Shaw in this case, the court is mindful that the hearing officer found that the presentation made at the hearing on behalf of C. and her parents by Attorney Shaw was "absolutely remarkable."

Based on the foregoing, the court determines that the plaintiff should be awarded attorney's fees in the amount of $57,925, based on 231.7 hours spent by Attorney Shaw on this case at $250 per hour, plus $1,428.79 in costs for the work and expenditures of plaintiff's counsel through December 16, 1996.

### III. *MOTION FOR ATTORNEY'S FEES FOR TIME SPENT AFTER DECEMBER 16, 1996*

On February 26, 1997, the plaintiff moved for an additional award of $7,080.00 in attorney's fees for work performed on this case by plaintiff's attorneys after December 16, 1996. Since December 16, 1996, Attorney Shaw has spent 28.0 hours in connection with the motion for summary judgment in this case. In addition, Attorney Shaw's associate, Joy K. Fausey, has spent 0.8 hours on this case since December 16, 1996. Attorney Shaw attests in his affidavit that the hourly rate of $100 for Attorney Fausey's time is a reasonable attorney's fee.

The defendant objects to the plaintiff's motion for attorney's fees for time spent after December 16, 1996 for the same reasons set forth in its memorandum of law in opposition to the plaintiff's motion for summary judgment, which reasons the court found to be unavailing.

Based on the court's analysis of the plaintiff's claim for attorney's fees made in its motion for summary judgment, the court also recommends that the plaintiff's motion for attorney's fees for time spent after December 16, 1996 be granted.

### CONCLUSION

Based on the foregoing, the court recommends that the plaintiff's Motion for Summary Judgment (doc. # 11) be GRANTED and that the plaintiff's Motion for Attorney's Fees for Time Spent After December 16, 1996 also be GRANTED, and that the plaintiff be awarded a total of $66,433.79 in attorney's fees and costs.

Either party may seek the district judge's review of this recommendation. See 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) 7 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objection to Magistrate Judge's recommended ruling waives any further review of the ruling).

September 8, 1997.