**C.C., by and through his mother and next friend, MRS. D., Plaintiff,**

v.

**GRANBY BOARD OF EDUCATION, Defendant.**

**No. 3:05–CV–1081 (RNC).**

United States District Court, D. Connecticut.

Sept. 30, 2006.

David C. Shaw, Law Offices of David C. Shaw, Bloomfield, CT, for Plaintiff.

Mark J. Sommaruga, Michael Peter McKeon, Sullivan, Schoen, Campane & Connon, Hartford, CT, for Defendant.

## RULING AND ORDER

CHATIGNY, District Judge.

This is an action brought on behalf of a Granby public school student against the Granby Board of Education seeking reimbursement for attorney's fees and other costs incurred in connection with a contested administrative hearing under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"). Plaintiff also seeks reimbursement for fees and costs incurred in this litigation, and an order requiring the Board to comply with the decision of the administrative hearing officer. Cross-motions for summary judgment have been filed. For the reasons that follow, the plaintiff's motion for summary judgment is granted with regard to attorneys' fees and costs, but denied with regard to enforcement of the hearing officer's decision, and the defendant's motion for summary judgment is denied.

### Facts

At the time the present motions were filed, the minor plaintiff, who will be referred to as "C.," was a tenth grade student attending Granby Memorial High School. (Pl.'s L.R. 56(a)1 Statement ¶ 1). He has received special education services in Granby public schools since he was in second grade, (Pl.'s L.R. 56(a) 1 Statement ¶¶ 2–9), except for a short time when he was in fifth and sixth grade. (Pl.'s L.R. 56(a)1 Statement ¶¶ 16–17).

During C.'s eighth grade year, achievement tests administered by the defendant Board indicated that he was "capable of reading 7th/8th grade materials at an independent level." (Pl.'s L.R. 56(a) 1 Statement ¶ 26). Different tests administered by the Lindamood–Bell program nine months earlier had indicated that he was able to read only at a 1.9 grade level. (Pl.'s L.R. 56(a)1 Statement ¶ 27). C.'s parents requested that the Board pay for 240 hours of instruction at Lindamood–Bell's center in Stamford as well as travel costs. A planning and placement team ("PPT") declined the parents' request, noting that C.'s performance was "quite good considering the impact of the cognitive deficits." (Pl.'s L.R. 56(a)1 Statement ¶ 27). After mediation, the Board agreed to pay for C. to receive twelve weeks of instruction at the Lindamood–Bell program. However, the Board did not provide transportation to and from Stamford. (See Pl.'s L.R. 56(a)1 Statement ¶ 30).

Near the end of C.'s twelve week instruction at LindamoodBell, his reading ability, per Lindamood–Bell's tests, increased to an 8.5 grade level. (*See* Pl.'s L.R. 56(a)1 Statement ¶ 31). C.'s parents subsequently requested an additional twelve weeks of Lindamood–Bell instruction, which the PPT declined. (*See* Pl.'s L.R. 56(a)1 Statement ¶ 31).

During the early part of C.'s ninth grade year, his mother requested an independent evaluation of his educational program, which was subsequently performed by Michelle Schneider. (*See* Pl.'s L.R. 56(a)1 Statement ¶¶ 41–42). Approximately one month after Schneider's evaluation, C.'s parents requested an administrative hearing pursuant to 20 U.S.C. § 1415. (*See* Pl.'s L.R. 56(a)1 Statement ¶ 65). After an eight day hearing, the hearing officer issued a twenty-one page decision. (*See* Pl.'s L.R. 56(a)1 Statement ¶ 66). The hearing officer found that the Board did not offer C. a free appropriate public education for the 2004–05 school year, ordered the parties to agree on an educational consultant to assist the PPT in developing and implementing an appropriate individualized education plan ("IEP"), ordered the Board to reimburse C.'s parents for the costs associated with Schneider's evaluation, and ordered the Board to place C. in the Lindamood–Bell reading program for twelve weeks and to provide transportation to the program. The Board did not appeal the hearing officer's decision. (*See* Pl.'s L.R. 56(a)1 Statement ¶ 77).

The Board subsequently retained Susan Santora to serve as the independent consultant ordered by the hearing officer. (*See* Pl.'s L.R. 56(a)1 Statement ¶ 83). Santora prepared a report and assisted the PPT with the development of an IEP. (*See* Pl.'s L.R. 56(a)1 Statement ¶ 84; *see also* Def.'s L.R. 56(a)(1) Statement ¶ 13). Approximately five months after filing the complaint in this case, C.'s parents filed a complaint with the Connecticut Department of Education requesting that the Department take action to enforce the hearing officer's orders. (*See* Pl.'s L.R. 56(a)1 Statement ¶¶ 76, 90).

## *Discussion*

### I. *The IDEA*

The IDEA is intended "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). In furtherance of this goal, the "IDEA requires that states [receiving certain federal funds] offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child." *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir.2002). Under the IDEA, parents are entitled to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). The "parents ... involved in such complaint shall have an opportunity for an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). Any "party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1). Aggrieved parties may also seek review of the findings and decision in federal or state court, but only after the parties seek whatever administrative review is available through the State educational agency. *See* 20 U.S.C. 1415(i)(2)(A).

### II. *Attorneys' Fees and Costs*

Congress has provided that in "any action or proceeding brought under [the

IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). Attorneys' fees must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)©. If the court finds that the hourly rate claimed by counsel unreasonably exceeds the prevailing rate for similar services charged by attorneys of reasonably comparable skill, reputation or experience, or that the time spent was excessive considering the nature of the action, the court must reduce the amount of fees awarded under the statute. 20 U.S.C. § 1414(i)(3)(F)(iii).

### A. *Prevailing Party Status*

 The Board denies that C. obtained all the relief he sought in the administrative hearing but does not seriously contest his claim that he qualifies as a prevailing party for purposes of the IDEA's fee-shifting provision. The essential test for prevailing party status is whether a party successfully obtains a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In an administrative proceeding, the "combination of administrative *imprimatur*, the change in the legal relationship of the parties arising from it, and subsequent judicial enforceability, render such a winning party a 'prevailing party' under *Buckhannon's* principles." *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 76 (2d Cir.2005). As discussed above, the hearing officer considered four issues and ruled in C.'s favor on all of them. (*See* Pl.'s Mem. Supp. Mot.

Summ. J. Ex. A 20). Accordingly, there is no doubt that C. should be regarded as a prevailing party entitled to attorney's fees under 20 U.S.C. § 1415(i)(3)(B).

### B. *The Lodestar Calculation*

Determining the amount of attorney's fees that C. should recover requires use of the "lodestar" method, "whereby an attorney fee award is derived 'by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate.'" *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir.1999) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)). The result of this calculation is presumed to be a reasonable fee, but it may be reduced if counsel's supporting documentation is inadequate.

#### 1. *Reasonable Hourly Rate*

 The parties dispute the rate that should be approved for the representation provided to plaintiff by his counsel, David C. Shaw. Plaintiff contends that the rate should be $375; the Board contends that it should be $275. Plaintiff relies primarily on an affidavit of a senior partner at a major Connecticut law firm, which states that "the prevailing rate charged by Connecticut based law firms for complex civil litigation for an attorney with thirty years of experience is within the range of $385.00 to $415.00 per hour." (*See* Pl.'s Mem. Ex. U 2–3).[1] The Board responds that the range set forth in the affidavit is irrelevant because this case involves an administrative hearing and Attorney Shaw's firm has only two attorneys. (*See* Def.'s Mem. 26). Further, the Board argues that a reasonable hourly rate for the services rendered by Attorney Shaw in this matter should more closely match that of its own counsel, who charges $225 per hour in IDEA cases.

---

**1.** The affidavit does not address the subject of the rates usually charged by lawyers representing plaintiffs in administrative hearings under the IDEA.

(*See* Def.'s Mem. 26). Both parties agree that the Court should take into account rates approved in similar cases in this District. *See Miele v. N.Y. State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 409 (2d Cir.1987) (trial judge may rely on her knowledge of prevailing community rates); *Evans v. Connecticut,* 967 F.Supp. 673, 691 (D.Conn.1997) (considering rates applied in prior cases).

After due consideration of the parties' submissions, I find that a reasonable hourly rate for Attorney Shaw's representation of the plaintiff in this matter is $315. This rate reflects a reasonable increase over rates previously approved by other judges in this District in similar cases involving Attorney Shaw. *See C.G. v. New Haven Bd. Of Educ.,* 988 F.Supp. 60, 69 (D.Conn.1997)(approving a rate of $250 per hour); *Ruben R. v. Hartford Bd. of Educ.,* No. 3:93CV1695 (AWT) (D.Conn. Aug. 28, 1996) (approving a rate of $230 per hour). In addition, it is consistent with rates the Second Circuit recently held to be reasonable for representation in administrative proceedings under the IDEA in New York City. *See A.R.,* 407 F.3d at 82 (district court reasonably found, based on evidence before it, that range of $300 to $350 was reasonable for representation at administrative hearings in New York City).[2]

### 2. *Reasonable Number of Hours*

### a. *The Administrative Proceeding*

■ Attorney Shaw claims to have spent a total of 241 hours working for the plaintiff in connection with the administrative proceeding.[3] Plaintiff contends that his success in that proceeding entitles him to recover a fully compensatory fee. *See Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Board strongly disagrees. In its view, the total number of hours claimed by Attorney Shaw in connection with the administrative proceeding is clearly excessive. The Board does not challenge the veracity of his time entries. Instead, it advances a series of calculations showing that he spent about 1.50 hours preparing for each hour he spent in the administrative hearing and drafting each page of his written submissions. In the Board's view, he should have spent no more than 0.5 hours preparing for each hour of hearing time, and no more than 0.75 per page. (*See* 10–20). This view is supported by the opinion of the Board's attorney (*See* Def.'s Mem. Ex. C ¶¶ 8–10), which the Board urges me to adopt as a matter of "common sense." (*See* Def.'s Mem. Law Supp. Cross–Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J. 11). In rebuttal, plaintiff argues that the time spent by Attorney Shaw was not excessive in any respect. (*See* Pl.'s Mem. Law Opp. Def.'s Cross–Mot. Summ. J. and Reply to Def.'s Opp. To Summ. J. 15–28).

After careful consideration, I find that the number of hours spent by Attorney Shaw in connection with the administrative proceeding should not be rejected as excessive. The representations set forth in

---

**2.** I recognize that the rate of $315 per hour is significantly higher than the rate of $225 per hour charged by the Board's own counsel, but the latter is clearly not controlling. *See id.,* 407 F.3d at 82 (upholding trial court's finding that defendant Department of Education's affidavits attesting to the rate the department historically paid defense counsel was unpersuasive on the issue of the reasonable rate for

plaintiff's counsel); *see also C.G. v. New Haven Bd. of Educ.,* 988 F.Supp. 60, 68–69 (D.Conn.1997) (finding board counsel's asserted rates inapplicable to the reasonable rates charged by attorneys representing plaintiffs in special education cases).

**3.** This figure is rounded off to the nearest whole number.

plaintiff's reply memorandum concerning the nature and complexity of the case and the manner in which it was contested (see id.), which I credit, provide adequate justification for the number of hours claimed. It is conceivable of course that a lawyer with Attorney Shaw's experience and expertise could have spent less time preparing for the hearing and drafting briefs and still achieved the same result, as the Board vigorously asserts. But the Board offers no evidence that other experienced IDEA counsel representing C. in this matter would have spent less time. Nor has it shown that Attorney Shaw's time entries, objectively viewed, are unreasonably excessive or redundant. As a result, its objection to the number of hours claimed by Attorney Shaw in connection with the administrative proceeding boils down to little more than "conclusory statements, conjecture, or speculation," which do not suffice to defeat summary judgment. See Kulak v. New York, 88 F.3d 63, 71 (2d Cir.1996).

b. *The Litigation*

■ Attorney Shaw claims to have spent 67 hours in connection with this litigation. The Board contends that the amount of time he spent preparing summary judgment papers is excessive. Plaintiff counters that the amount of time spent preparing the Rule 56(a)1 Statement (13.5 hours) and drafting the memorandum of law (17.1 hours) was not unreasonable. (See Pl.'s Mem. Law Opp. Def.'s Cross–Mot. Summ. J. And Reply to Def.'s Opp. To Summ. J. 25–26). After reviewing the pleadings in question, I agree with the Board that the time spent on the Rule 56(a)1 Statement is excessive, but find that the time spent on the memorandum of law is not. This results in a reduction of 3.5 hours from the amount claimed.

■ The Board contends that certain time entries for work performed by Attorney Shaw after the conclusion of the administrative hearing should not be included in the lodestar because the work was either unnecessary or unrelated to the hearing or this case. The time entries in question, as evidenced by supporting documentation, relate primarily to efforts to secure relief ordered by the hearing officer.

Prevailing civil rights plaintiffs are entitled to attorneys' fees for post-judgment monitoring. See, e.g., Martin v. Hadix, 527 U.S. 343, 359–60, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (awarding attorneys' fees for post-judgment monitoring performed in prison litigation); Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 559, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (post-judgment monitoring of consent decree compensable in Clean Air Act litigation); New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1145 (2d Cir.1983) (§ 1988 action). Protection "of the full scope of relief [obtained] ... [is] crucial to safeguard the interests asserted by [plaintiff]; and enforcement of the decree, whether in the courtroom before a judge, or in front of a regulatory agency, ... involve[s] the type of work which is properly compensable as a cost of litigation." Delaware Valley Citizens' Council, 478 U.S. at 558, 106 S.Ct. 3088. Accordingly, I find that the disputed time entries are compensable with the following exception.

As part of his efforts to secure the relief ordered by the hearing officer, Attorney Shaw spent one hour attending a PPT meeting. Under the IDEA, attendance at such meetings is not compensable unless the meeting "is convened as a result of an administrative proceeding or judicial action." 20 U.S.C. § 1415(i)(3)(D)(ii)(I). See also Mr. & Mrs. B. v. Weston Bd. of Educ., 34 F.Supp.2d 777, 783 n. 5 (D.Conn. 1999) (holding that time expended for at-

tendance of PPT meetings was not compensable). Plaintiff has not shown that the meeting falls within this provision. Accordingly, I reduce the lodestar amount by another hour.[4]

### 3. *Vague Entries*

The Board argues that vague entries in Attorney Shaw's billing records require a further reduction in the total number of hours used in the lodestar calculation. Counsel seeking fees are "not required to record in great detail how each minute of [their] time was expended." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933. However, they must "keep and present records from which the court may determine the nature of the work done, [and] the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987) (rejecting time records with one description for an entire day's work). In general, the submitted time records satisfy this standard, but some of them do contain the kind of entries, such as "preparation for hearing" that have been rejected as vague by other judges of this court. *See G.M. v. New Britain Bd. of Educ.*, No. 3:96CV2305AVC, 2000 WL 435577, at *5 (D.Conn. Mar.8, 2000) (reducing lodestar by 20 percent because entries such as "preparation for hearing" were inadequate). Accordingly, I will reduce the lodestar amount by 6.3 hours to account for these entries.

### 4. *Paralegal Fees*

Plaintiff requests fees for five hours spent by Attorney Shaw's paralegal during the litigation at a rate of $75 per hour. The Board has not contested the reasonableness of this claim. Other judges in this district have found paralegal fees of $85 per hour to be reasonable. *See Connecticut State Dept. of Soc. Serv.*, 289 F.Supp.2d at 206 (noting that "experienced or specialized paralegals can command well over $100 per hour"). Accordingly, I conclude that the requested paralegal fees are reasonable.

### C. *Costs*

Plaintiff requests reimbursement of $5,462.50 in litigation-related costs and expert fees. After the parties' papers were filed, the Supreme Court held that expert fees are not recoverable under the IDEA. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, —— U.S. ——, ——, 126 S.Ct. 2455, 2458, 165 L.Ed.2d 526 (2006). Accordingly, $4,875.00 in claimed expert fees must be excluded.

The Board contests $101.80 in costs relating to fees for a marshal to serve the complaint in this action. These fees are fully taxable under 28 U.S.C. § 1920(1). *See also* L.R. 54(c)(1). The Board also contests $74.72 in claimed costs based on plaintiff's election to send various documents via Federal Express instead of first class mail. While these expenses do not fall within the enumerated categories of taxable costs under § 1920 or Local Rule 54, they are "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients," and are thus recoverable as part of the attorneys' fees award. *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998).[5]

---

**4.** To the extent the post-hearing time entries relate to time spent on the present fee litigation, they are compensable. *See Gagne v. Maher*, 594 F.2d 336, 343–44 (2d Cir.1979).

**5.** There are two reasons why *Arlington* does not change this conclusion. First, the *Arlington* court interpreted the attorneys' fees provision of the IDEA in reference to that of

### III. Enforcement of the Hearing Officer's Decision

■ Plaintiff raises a number of issues concerning the Board's alleged failure to comply with the hearing officer's decision. Most significantly, the Board allegedly informed C.'s parents that it intended to terminate the services of Ms. Santora, the educational consultant, before the IEP was completely developed or implemented. (*See* Pl.'s Mem. 47–48). In addition, the Board allegedly failed to reimburse C.'s parents, as required by the hearing officer's decision, for fees paid to Ms. Schneider for her independent evaluation of C. (*See* Pl.'s Mem. 48). The Board generally denies plaintiff's claims, and specifically disputes whether the hearing officer's decision requires reimbursement of all of Ms. Schneider's fees. (*See* Def.'s Mem. 5, 27).

In asking the court to issue orders enforcing the hearing officer's decision, plaintiff relies on 20 U.S.C. § 1415(i)(2)(A), which provides that any "party aggrieved by the findings and decision [of the hearing officer] ... who does not have the right to an appeal [under the state administrative system] ..., shall have the right to bring a civil action ..., which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." This provision does not entitle a prevailing party to seek enforcement of a hearing officer's decision in federal court. *See Antkowiak v. Ambach,* 838 F.2d 635, 641 (2d Cir.1988)(plaintiff "received precisely the relief ... sought from the hearing officer. Under the [IDEA, he] 'had neither the responsibility nor the right to appeal the favorable decision by the local hearing officer since [he was] not aggrieved by her decision.' ") (quoting *Robinson v. Pinderhughes,* 810 F.2d 1270, 1272 (4th Cir. 1987)); *see also McAdams v. Bd. of Educ. of the Rocky Point Union Free Sch. Dist.,* 216 F.Supp.2d 86, 93–94 (E.D.N.Y.2002)(noting that a party may not seek to enforce a favorable decision under the IDEA since the party is not aggrieved by such a decision).[6] As noted at the outset, moreover, plaintiff has sub-

§ 1988, which the Court had previously interpreted as not encompassing expert fees. *See Arlington Cent. Sch. Dist. Bd. of Educ.,* 126 S.Ct. at 2462. Section 1988 is also the applicable provision in *LeBlanc–Sternberg. See LeBlanc–Sternberg,* 143 F.3d at 756. Second, the *Arlington* court interpreted the respective meanings of "attorneys' fees" and "costs" on the narrow issue of whether expert witness fees are included within the meaning of either term. *See Arlington Cent. Sch. Dist. Bd. of Educ.,* 126 S.Ct. at 2461–63. Accordingly, *LeBlanc–Sternberg* still controls as to out-of-pocket expenses that are not expert witness fees. Additionally, plaintiff's use of Federal Express rather than the postal service is reasonable in light of the Board's claim that it did not receive copies of certain its plaintiff filed in connection with his motion for summary judgment. (*See* Def.'s L.R. 54(a)(2) Statement 8–9).

**6.** The Federal Department of Education, pursuant to its authority under the IDEA, has promulgated regulations, not yet effective, establishing that a "complaint alleging a [local] public agency's failure to implement a due process hearing decision must be resolved by the [state educational agency]." 34 C.F.R. § 300.152(c)(3) (effective Oct. 13, 2006). Further, the Connecticut legislature has enacted a provision providing that if the school district responsible for providing special education to a child:

[D]oes not take action on the findings or prescription of the hearing officer or board within fifteen days after receipt thereof, the State Board of Education shall take appropriate action to enforce the findings or prescriptions of the hearing officer or board. Such action may include application to the Superior Court for injunctive relief to compel such local or regional board or school district to implement the findings or prescription of the hearing officer or board.

Conn. Gen.Stat. § 10–76h (d)(2).

mitted a complaint with the Connecticut Department of Education seeking to enforce the hearing officer's order. (*See* Pl.'s L.R. 56(a)(1) Statement ¶ 90). There is no evidence has exhausted this administrative remedy or that compliance would be futile. *See J.S. v. Attica Cent. Sch.,* 386 F.3d 107, 112 (2d Cir.2004) (noting that IDEA requires exhaustion of administrative remedies or alternatively a showing that compliance with the exhaustion requirement would be futile). Accordingly, the court lacks subject matter jurisdiction to enforce the hearing officer's order.

## III. *Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment [Doc. # 29] is hereby granted as to attorney's fees and costs, but his claim for enforcement of the hearing officer's order is denied, and defendant's motion for summary judgment [Doc. # 40] is denied. The plaintiff is awarded attorneys' fees and costs in the total amount of $93,827.50.

So ordered.