**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

M. S., a minor, by and through his parents and next friends, Carl and Jacqueline Simchick; JACQUELINE SIMCHICK,

*Plaintiffs-Appellants,*

v.

FAIRFAX COUNTY SCHOOL BOARD,

*Defendant-Appellee,*

and

FAIRFAX COUNTY PUBLIC SCHOOLS; JACK DALE, individually and in his official capacity as Superintendent of Fairfax County Public Schools; JOYCE SUYDAM, individually and in her official capacity as Director of Secondary Special Education Services, Fairfax County Public Schools; ELEANOR BARNES, individually and in her official capacity as the former Coordinator of Special Education Monitoring and Compliance, and currently as Director of Student Services, Fairfax County Public Schools; MARTIN HUMBERTSON, individually and in his official capacity as Coordinator of Special Education Monitoring and Compliance, Fairfax County Public Schools;

No. 07-1555

VIRGINIA DEPARTMENT OF
EDUCATION; VIRGINIA BOARD OF
EDUCATION; JO LYNNE DEMARY,
individually and in her official
capacity as State Superintendent of
Public Instruction for the State of
Virginia; JUDITH DOUGLAS,
individually and in her official
capacity as Director of Dispute
Resolution and Administrative
Services, Virginia Department of
Education,

*Defendants.*

CHILDREN'S LAW CENTER; VIRGINIA
OFFICE FOR PROTECTION AND
ADVOCACY,

*Amici Supporting Appellants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:05-cv-01476-JCC)

Argued: September 23, 2008

Decided: January 14, 2009

Before WILLIAMS, Chief Judge, WILKINSON, Circuit
Judge, and Richard L. VOORHEES, United States District
Judge for the Western District of North Carolina, sitting by
designation.

Affirmed in part and vacated and remanded with instructions in part by published opinion. Chief Judge Williams wrote the opinion, in which Judge Wilkinson and Judge Voorhees joined.

---

**COUNSEL**

**ARGUED:** William Henry Hurd, TROUTMAN & SANDERS, L.L.P., Richmond, Virginia, for Appellants. John Francis Cafferky, BLANKINGSHIP & KEITH, P.C., Fairfax, Virginia, for Appellee. **ON BRIEF:** Siran S. Faulders, Stephen C. Piepgrass, TROUTMAN & SANDERS, L.L.P., Richmond, Virginia, for Appellants. Thomas J. Cawley, Jill Marie Dennis, HUNTON & WILLIAMS, McLean, Virginia, for Appellee. Adrienne E. Volenik, Director, Disability Law Clinic, Alisa Ferguson, Third Year Law Student, Children's Law Center, RICHMOND SCHOOL OF LAW, University of Richmond, Virginia; Jonathan Martinis, Managing Attorney, VIRGINIA OFFICE FOR PROTECTION AND ADVOCACY, Richmond, Virginia, for Amici Supporting Appellants.

---

**OPINION**

WILLIAMS, Chief Judge:

M.S., a student with multiple disabilities in the Fairfax County, Virginia schools, appeals from a district court order in this action involving the application of the Individuals with Disabilities in Education Act ("IDEA"), codified at 20 U.S.C.A. § 1400 *et seq.* (West 2000 & Supp. 2008). In particular, M.S.'s parents appeal the district court's denial of reimbursement for his parental placement from 2002-2005, and its finding that the Fairfax County School Board's 2005-2006 Individualized Education Program ("IEP") for M.S. was ade-

quate under the IDEA. Because the district court failed to evaluate the parental placement on a year-by-year basis and to consider whether partial reimbursement might be appropriate, we vacate the district court's denial of reimbursement for the parental placement and remand for further proceedings. We affirm the district court's finding that the 2005-2006 IEP developed by Fairfax County was adequate under the IDEA.

## I.

## A.

An overview of the IDEA and its relevant procedures will help place the following discussion in context. Congress passed the IDEA to provide disabled children with programs "that emphasize[ ] special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C.A. § 1400(d)(1)(A). The IDEA requires all states receiving federal education funds to provide disabled schoolchildren with a "free appropriate public education" ("FAPE"). 20 U.S.C.A. § 1412(a)(1)(A). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982) (internal quotation marks omitted).

IEPs are the primary vehicle through which schools provide a particular student with a FAPE. To that end, IEPs "must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." *MM ex rel. DM v. Sch. Dist.*, 303 F.3d 523, 527 (4th Cir. 2002); *see* 20 U.S.C.A. § 1414(d)(1)(A). Further, an IEP must ultimately be "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207.

The IDEA prescribes procedures for developing and challenging IEPs. 20 U.S.C.A. § 1415. Parents may participate in the IEP development process and may challenge IEPs they believe are inadequate. § 1415(b)-(h). To challenge an IEP, parents must present complaints to the school and request a due process hearing. § 1415(b)(6), (f)(1)(A). These procedural safeguards are "designed to ensure that the parents or guardian of a child with a disability are each notified of decisions affecting their child and given an opportunity to object to these decisions." *MM ex rel. DM*, 303 F.3d at 527 (internal quotation marks omitted).

## B.

M.S. was born in 1988 and currently resides in Fairfax County, Virginia, where he was enrolled in public school from 1996-2002.[1] M.S. has been diagnosed with mental retardation, mild to moderate autism, and a significant communication disorder.[2] This communication disorder contains two components: severe verbal and oral motor dyspraxia, which affects the mechanical abilities of speech, and auditory processing delays.[3] M.S. has a very limited ability to speak and must frequently use sign language to communicate. M.S. also suffers from severe deficits in his short-term memory.[4] M.S.'s

---

[1]M.S. began attending Fairfax County schools in the first grade. M.S. was moved to the fifth grade after his second grade year, due to his age, and thus did not have a third or fourth grade year. He remained in Fairfax County schools from fifth grade through eighth grade.

[2]Under the Individuals with Disabilities in Education Act ("IDEA"), codified at 20 U.S.C.A. § 1400 *et seq.* (West 2000 & Supp. 2008), M.S. suffers from "[m]ultiple disabilities," meaning that he has "concomitant impairments . . . the combination of which causes such severe educational needs that they cannot be accommodated in special education programs solely for one of the impairments." 34 C.F.R. § 300.7(c)(7) (2008).

[3]Dyspraxia "is a speech disorder that interferes with [M.S.]'s ability to initiate and sequence motor movements for speech. . . . [It] is characterized by the loss of ability to consistently position the articulators for speech. Unintelligible speech is the result in children . . . ." (J.A. at 1514.)

[4]Specifically, M.S.'s working memory is that of a two-year old.

IQ is generally measured at between 37 and 41, the approximate mental functioning of a four-year old.

Although Fairfax County prepared annual IEPs for M.S. in each of the six years he was enrolled in Fairfax County schools, he made little progress while enrolled there. In fact, during these six years, M.S. only mastered the academic objectives specified in his IEPs once. Moreover, by 2002, the end of M.S.'s eighth grade year, he could only make approximately fifteen signs for sign language and produce roughly twelve to fifteen words intelligibly. His ability to identify words was significantly limited: on one test, administered three times during the eighth grade, he was able to identify only three words: "a," "I," and "no."[5] (J.A. at 1027.) He was unable to count higher than six and became discouraged in his efforts to communicate.

### C.

On December 21, 2001, M.S.'s parents initiated a due process hearing, suggesting placement at the Lindamood-Bell Center, a facility focusing on the "building blocks" of communication — phonemic awareness, symbol imagery, and concept imagery. On March 5, 2002, Fairfax County proposed to pay for twelve weeks of attendance at Lindamood-Bell on the condition that M.S. return to Fairfax County schools at completion of the twelve weeks. The parents declined this offer.

On May 28, 2002, following a formal hearing finding that M.S. suffers from several disabilities, including autism, Fairfax County finally acknowledged that M.S. should be classified as having "[m]ultiple [d]isabilities."[6] (J.A. at 1122.)

---

[5]His reports also show, however, that at various times he was able to identify other words, such as "map," "mom," "big bug," and "A Big Dog A little cat." (J.A. at 502-508.)

[6]It appears that M.S.'s parents had unsuccessfully attempted to have his autism recognized for years, but that Fairfax County resisted this diagnosis despite at least three physician reports from as early as 1996 that suggested an atypical autism diagnosis would have been appropriate.

Thereafter, Fairfax County and M.S.'s parents met to discuss an IEP for 2002-2003, M.S.'s freshman year in high school. Fairfax County rejected the parents' request to place M.S. at Lindamood-Bell, and recommended an IEP similar to those of the preceding six years. Specifically, Fairfax County's IEP contained no assurances that M.S. would receive the one-on-one instruction that his parents requested. The IEP provided two hours per week of speech and language therapy, one-and-a-half hours per week of physical education, and one-half hour per week of written language, in addition to other courses, including reading, independence and community skills, communication, articulation, and oral motor and math skills. In total, twenty-three-and-one-half hours per week of special education in both small-group special education classes and general education classes with special education support were to be provided.

On June 24, 2002, the parents rejected the proposed 2002-2003 IEP and informed Fairfax County that they intended to enroll M.S. privately at Lindamood-Bell. At the parents' request, Fairfax County prepared additional IEPs for the 2002-2005 school years, all of which provided a life skills program to address work behavior, social skills, and peer interaction, in addition to academics. None, however, guaranteed any one-on-one instruction.

D.

After deciding to remove M.S. from Fairfax County public schools, but before deciding on Lindamood-Bell, his parents contacted at least three private schools in the area. M.S. was denied admission to two, and the third school had no openings at the time. Accordingly, M.S.'s parents crafted the following education program for M.S., which focused primarily on one-on-one academic education as opposed to group classroom settings:

> *Lindamood-Bell Center*: one-on-one instruction for five days per week (six hours per day during the

school year and four hours per day during the summer);

*Sign Language*: one-on-one instruction from a licensed Virginia teacher (one hour per week);

*Speech and Language Therapy*: one-on-one speech and language therapy from Building Blocks Therapy, LLC and Kids Communication Center (three hours per week);

*Physical Therapy*: participation in group activities such as the Broad Run Riding School, the therapeutic program at Dance Abilities, and the Special Olympics equestrian program (two to three hours per week);

*Vocational Training*: cutting grass in the neighborhood for $20/hour.

The parents maintained this program from 2002-2006, all four of M.S.'s high-school years, and paid all associated costs. The main component of the parents' program was Lindamood-Bell.

Lindamood-Bell is a learning center focused on the "building blocks" of communication — phonemic awareness, symbol imagery, and concept imagery. It is neither a school nor a special education facility, and it does not require teachers to be certified in special education. Lindamood-Bell is "not designed to provide curriculum," but rather to develop "underlying skills . . . necessary in order for the students to be able to access the curriculum within their traditional school settings." (J.A. at 1973.)

Lindamood-Bell is on the approved-list of Virginia Supplemental Education Services Providers for Virginia and Fairfax County, and its services have been used as a remedy in other

circumstances where a school district has violated the IDEA by failing to provide a disabled child with a FAPE.[7]

Fairfax County and Lindamood-Bell both tracked M.S.'s progress at Lindamood-Bell from 2002-2005. In M.S.'s 2003-2004 IEP, Fairfax County noted that M.S. could "read, without prompts, homemade books," (J.A. at 1108), had "115 sight and decodable words," (J.A. at 1108), and could "identify numbers 1-10 . . . [and] count out money for taxi ride[s]," (J.A. at 1113.) In the 2004-2005 IEP, Fairfax County noted that M.S. could now "recognize and/or decode 156 words," (J.A. at 1629), and that M.S. was "able to greet, protest, provide information, show interest, inquire, comment and remind," (J.A. at 1624). By 2005, the IEP recognized that M.S. could count "numbers 1-12 accurately and with varying accuracy to 15." (J.A. at 343.) Finally, in the 2006-2007 IEP, Fairfax County recognized that M.S. had "a vocabulary of about 500 words and phrases, that he [was] learning and reviewing," (S.J.A. at 344), and that he could "count things in his environment . . . [and] count [numbers] 11-15 fairly consistently," (S.J.A. at 347).

Lindamood-Bell also recorded M.S.'s progress, noting that a review of "daily clinical records, observations, program checklists, [and] just interacting with [M.S.]," revealed progress at Lindamood-Bell. (J.A. at 2013-14.) This progress included M.S.'s increased ability to sign, understand, and verbalize simple sentences, as well as his ability to produce written notes. Although these notes were exceedingly simple in their content ("Dear Dad I hope you feel better. Love [M.S.]"

---

[7]*See, e.g.*, *Draper v. Atlanta Indep. Sch. Sys.*, 480 F. Supp. 2d 1331, 1351 n.8 (N.D. Ga. 2007) (noting that the ALJ offered a prospective remedy that included 5 hours per week of intensive multisensory reading services at Lindamood-Bell Center); *C.C. ex rel. Mrs. D. v. Granby Bd. of Educ.*, 453 F. Supp. 2d 569, 571-72 (D. Conn. 2006) (noting that school board did not appeal either the Hearing Officer's decision to place student in Lindamood-Bell reading program for twelve weeks or its order that the school provide transportation).

(J.A. at 1601)), M.S., by contrast, had shown almost no writing ability when he left the Fairfax County public schools.

Although M.S. made minimal progress on standardized testing across a broad range of subjects from 2002-2005, none of Fairfax County's witnesses could testify that M.S. made no progress while at Lindamood-Bell. In fact, Dr. Ticknor, the school psychologist, wrote in her 2004 report that M.S., who was initially reserved, became increasingly comfortable and appeared to enjoy social interactions with adults and noted that she was "struck by [M.S's] desire for social connection . . . and the lack of . . . overly self-focused behaviors typical of many young people with Pervasive Developmental Disorder." (J.A. at 817.)

E.

From 2002-2005, M.S. remained at Lindamood-Bell. M.S.'s parents continued to negotiate with Fairfax County during this time, sending numerous emails and letters in the eighteen months following the June 24, 2002 IEP meeting. Finally, in June 2004, M.S.'s parents filed a request for a due process hearing challenging the IEPs for 2002-2003, 2003-2004, and 2004-2005. M.S.'s parents, in addition to challenging these three IEPs, also requested reimbursement for the costs of sending M.S. to Lindamood-Bell and of acquiring the other service providers for M.S.

The hearing officer ("HO") held a due process hearing over several days in October and November 2004. Both sides presented testimony from numerous witnesses. Fairfax County's witnesses generally testified that M.S. made little progress at Lindamood-Bell, as shown in standardized testing, and that he needed far more peer interaction than provided at Lindamood-Bell. M.S.'s witnesses, on the other hand, testified that M.S. had never advanced at Fairfax County schools and that intensive one-on-one instruction was necessary to keep M.S. on

task and give him a chance to develop underlying communication skills.

Faced with conflicting testimony from interested parties, the HO ruled that the three IEPS from 2002-2005 were invalid under the IDEA, and that Lindamood-Bell was an inappropriate placement. Therefore, he awarded no reimbursement for M.S.'s time at Lindamood-Bell.[8] Driving the HO's decision was his conclusion that "[M.S.] need[ed] both the experience of group teaching and the interaction with peers as well as an intensive one-on-one academic program." (J.A. at 2351.) To that end, the HO concluded that the IEPs were invalid because they focused too much on group interaction and too little on one-on-one instruction. Likewise, the HO concluded that Lindamood-Bell was not an appropriate placement because it focused too much on one-on-one instruction and had little group interaction. The HO also determined that Lindamood-Bell was inappropriate because it was not an accredited school and it failed to offer vocational training. The HO also directed Fairfax County to provide an appropriate IEP for the 2005-2006 school year.

Both parties sought review of the HO's decision in the United States District Court for the Eastern District of Virginia. The district court, as permitted by the IDEA, *see* 20 U.S.C.A. § 1415(i)(2)(C)(ii) (requiring district court to hear additional evidence "at the request of a party"), held an evidentiary hearing to take additional evidence before rendering a decision. On May 8, 2007, the district court affirmed the HO's decision. The district court also upheld the 2005-2006 IEP as providing a FAPE.

M.S.'s parents noted a timely appeal, and we possess jurisdiction under 28 U.S.C.A. § 1291 (West 2006).

---

[8]The HO did, however, award reimbursement for sign language and speech/language therapy services that M.S. received under his parents' program.

II.

On appeal, M.S.'s parents contend: (1) the district court erred by not awarding any reimbursement for Lindamood-Bell; and (2) the district court erred by concluding that the 2005-2006 IEP was valid.**⁹** We address each claim in turn.

A.

In a proceeding under the IDEA, we conduct a modified de novo review, giving "due weight" to the underlying administrative proceedings. *Rowley*, 458 U.S. at 206; *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 103 (4th Cir. 1991) ("Generally, in reviewing state administrative decisions in IDEA cases, courts are required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings."). We do not, however, "substitute [our] own notions of sound educational policy for those of local school authorities." *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 999 (4th Cir. 1997). When a district court has heard and considered additional evidence, we review its findings of fact for clear error. *MM ex rel. DM*, 303 F.3d at 531.

B.

We first turn to the parents' contention that the district court erred in not awarding any reimbursement for M.S.'s education at Lindamood-Bell. The IDEA provides for parental reimbursement for private placements if (1) the school district fails to provide a FAPE and (2) the parental placement is

---

**⁹**The parents also challenge the district court's failure to grant reimbursement for various speech/language and sign language placement expenses. Because these arguments were not presented to the district court, they have been forfeited. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("Generally, issues that were not raised in the district court will not be addressed on appeal.").

appropriate. *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985). Because Fairfax County does not dispute that the 2002-2005 IEPs failed to provide M.S. with a FAPE, the only issue before us is whether the Lindamood-Bell placement was appropriate. Like an IEP, a parental placement is appropriate if it is "reasonably calculated to enable the child to receive educational benefits." *Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156, 163 (4th Cir. 1991) (internal quotation marks omitted).

In challenging the district court's decision denying reimbursement, the parents focus on three alleged errors: (1) the failure to consider the appropriateness of Lindamood-Bell placement on a year-by-year basis, as well as the appropriateness of partial reimbursement, (2) the inappropriate consideration of M.S.'s lack of progress, and (3) the application of the least-restrictive environment test to a parental placement. We now consider each argument.

1.   Year-by-Year Analysis and Partial Reimbursement

The parents contend that the district court erred by failing to evaluate each year of the Lindamood-Bell placement on an independent basis. We agree.

As noted, when evaluating whether reimbursement is appropriate for a parental placement, we determine (1) whether the IEP provided by the school district failed to provide a FAPE, and, if so, (2) whether the parental placement was appropriate. *Burlington*, 471 U.S. at 369. By statute, IEPs are evaluated "periodically, but not less frequently than annually." 20 U.S.C.A. § 1414(d)(4)(A)(i); *Honig v. Doe*, 484 U.S. 305, 311 (1988). Of course, because the finding of an invalid IEP for a particular school year is a necessary precursor to reimbursement for a parental placement, we necessarily must also consider the appropriateness of a particular placement on the same year-by-year basis. Evaluating both IEPs and parental placements on a yearly basis simply acknowledges that

what is "reasonably calculated" to confer some educational benefit on the child may change over time.[10]

Here, the district court considered M.S.'s time at Lindamood-Bell in its entirety instead of separating out each year. We believe this was error, and, accordingly, we vacate the district court's decision that Lindamood-Bell was an inappropriate placement and remand the case for year-by-year analysis of whether Lindamood-Bell was an appropriate placement. Because the district court has found that Fairfax County's IEPs violated the IDEA, it may award reimbursement if it finds *any* year of instruction at Lindamood-Bell to be "reasonably calculated" to confer some educational benefit on M.S.

Moreover, the district court must also consider whether, given the equitable nature of the IDEA, *see Burlington*, 471 U.S. at 374 (noting that "equitable considerations are relevant in fashioning relief"), some partial reimbursement is appropriate for any given year.[11] A district court has the power to

---

[10]For example, at the time M.S. was initially placed at Lindamood-Bell, his parents had unsuccessfully tried to place him in three other schools. Lindamood-Bell was willing to accept M.S. and believed he would benefit from its services. Furthermore, audiologist Dr. Lucker recommended Lindamood-Bell to the parents after careful consideration based upon the individualized program offered to M.S. At the moment of initial enrollment, M.S.'s parents, like all parents beginning an educational program they hope will benefit their special needs child, could not have known if their son would ultimately fail to make progress. Where a child does fail to make progress, full reimbursement for subsequent school years in the same program is likely inappropriate. *See infra* Section II.B.2 (discussing district court's consideration of lack of progress).

[11]Throughout its brief, Fairfax County argues that any equitable considerations weighing in favor of the parents' request for reimbursement are outweighed by the parents' delay in filing this suit until 2004, after M.S. had already spent two years at Lindamood-Bell. We decline the opportunity to impose filing deadlines not issued by Congress when authorizing these equitable remedies. First, the parents have presented evidence that the delay was due to their unsuccessful efforts to negotiate with Fairfax

"grant such relief as [it] determines is appropriate," 20 U.S.C.A. § 1415(i)(2)(C)(iii), in light of a school system's failure to provide educational benefit to a disabled student. This language confers "broad discretion" on the court in fashioning an appropriate remedy. *Burlington*, 471 U.S. at 369; *see also Draper v. Atl. Indep. Sch. Sys.*, 518 F.3d 1275, 1283-90 (11th Cir. 2008) (upholding an award of six years of prospective compensatory education at a private placement); *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 394 (3d Cir. 2006) (upholding an award of partial reimbursement for the difference between the amount of time actually offered by the school board's IEP and the amount of time that should have been offered to a disabled student for speech therapy); *Adams v. Oregon*, 195 F.3d 1141, 1151 (9th Cir. 1999) (remanding to determine whether partial reimbursement is appropriate where parents supplemented the school program).

And, the Supreme Court has instructed that "[c]ourts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including *the appropriate and reasonable level* of reimbursement that should be required." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993) (emphasis added). In determining whether partial reimbursement is appropriate, "the district court may consider the following factors, among others: the existence of other, perhaps more appropriate, substitute placements, the effort expended by [the] parents in securing alternative place-

County to resolve their concerns out of court. Second, the Supreme Court has recognized that "the review process is ponderous," and held reimbursement to be an appropriate remedy for precisely that reason. *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). Even if the administrative review process had been completed within Virginia's 45-day statutory window, "[a] final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed." *Id.*

ments[,] and the general cooperative or uncooperative position of [the school board]." *Adams*, 195 F.3d at 1151.[12]

The equitable nature of the IDEA statute does not mean, of course, that courts are at liberty to award reimbursement out of the blue. Rather, as noted above, it is clear that the IDEA provides for reimbursement only if (1) the school district fails to provide a FAPE and (2) the parental placement is "reasonably calculated to enable the child to receive educational benefits." *Carter*, 950 F.2d at 163 (internal quotation marks omitted); *see also Burlington*, 471 U.S. at 369. These two findings lie at the heart of the statute.

In this regard, we note that the hearing officer and district court made findings that Lindamood-Bell had fallen short in several significant respects, namely in the failure to provide the life skills and vocational training and the group interaction needed by M.S. for his instruction. We accord great deference to such findings under our precedent. *See MM ex rel. DM*, 303 F.3d at 531 (holding that "findings of fact made in administrative proceedings are considered to be prima facie correct," and that "where a district court has heard and considered additional evidence, . . . we review its findings of fact for clear error"). Whether the identified shortcomings of Lindamood-Bell were of such a nature as to preclude the realization of an educational benefit for M.S. is, of course, for the trier of fact to determine on remand. However, they do not preclude as a matter of law the possibility that the one-on-one instruction provided by Lindamood-Bell warranted some reimbursement. Therefore, if the district court, on remand, again determines that full reimbursement for Lindamood-Bell is inappropriate for one or more school years, it must nonetheless consider whether partial reimbursement is appropriate in any year for

---

[12]For example, M.S.'s parents unsuccessfully attempted to negotiate with Fairfax County for more one-on-one instruction in the public school setting and were unable, despite several attempts, to place M.S. in other private schools.

the one-on-one services that Lindamood-Bell provided to M.S. Here, the HO and the district court concluded that M.S. needed significant one-on-one instruction that Fairfax County failed to provide for 2002-2005. *M.S. v. Fairfax County Sch. Bd.*, No. 1:05cv1476, 2007 U.S. Dist. LEXIS 33735, at *32-*33 (E.D. Va. 2007). Lindamood-Bell provided thirty hours per week of one-on-one instruction in the "building blocks" of communication. If the district court determines that any time spent at Lindamood-Bell during any or all of the 2002-2005 school years was "reasonably calculated to enable [M.S.] to receive educational benefits," M.S.'s parents may be reimbursed for such period as the district court deems appropriate. *Carter*, 950 F.2d at 163 (internal quotation marks omitted); *see also Burlington*, 471 U.S. at 369.

### 2.   Actual Progress and the Least Restrictive Environment

Having remanded the case for further proceedings, we now address two other legal arguments made by M.S.'s parents that are relevant on remand: the district court erred by (1) considering M.S.'s lack of progress and (2) applying the least restrictive environment requirement to their private placement.[13]

The district court found, as a factual matter, that M.S. made minimal actual progress at Lindamood-Bell. *M.S.*, No. 1:05cv1476, 2007 U.S. Dist. LEXIS 33735, at *44-*45. The parents contend that, because the IDEA speaks of programs "reasonably calculated" to provide an educational benefit, M.S.'s actual progress while at Lindamood-Bell is irrelevant as to whether his initial placement there was appropriate.[14]

We begin by noting that the parents' argument lacks sup-

---

[13]"[O]ur court regularly issues opinions to provide guidance on remand in the interest of judicial efficiency." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 n.2 (4th Cir. 2007).

[14]As discussed above, the parents dispute whether M.S. made any actual progress. For the purposes of this section, we assume he did not.

port in our caselaw. Although other circuits have held that an IEP's "appropriateness is judged prospectively so that any *lack of progress* under a particular IEP . . . does not render that IEP inappropriate," *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 530 (3d Cir. 1995) (emphasis added); *see also Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 992 (1st Cir. 1990) ("An IEP is a snapshot, not a retrospective. In striving for 'appropriateness,' an IEP must take into account what was, and was not, objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated."), we have concluded that, in some situations, evidence of *actual progress* may be relevant to a determination of whether a challenged IEP was reasonably calculated to confer some educational benefit, *see MM ex rel. DM*, 303 F.3d at 532 (finding error where the district court concluded that the 1995-96 IEP was inadequate because it "failed to consider the actual educational progress" made by the student during the 1995-96 school year). To be sure, however, progress, or the lack thereof, while important, is not dispositive. *See Rowley*, 458 U.S. at 207 n.28 ("[T]he achievement of passing marks and advancement from grade to grade will be *one* important factor in determining educational benefit." (emphasis added)).

Here, the district court's decision correctly followed precedent. The court looked at M.S.'s actual progress on standardized tests, but only as one factor. Rather, the court also joined with the HO in finding that M.S. required both one-on-one and group instruction, as well as vocational and social education. Accordingly, the district court's decision to consider M.S.'s actual progress as a factor in determining whether the Lindamood-Bell placement was proper.

We also believe the district court did not err in handling the least restrictive environment requirement in the IDEA. Under the IDEA, schools must place disabled students in the least restrictive environment to achieve a FAPE. Thus, a disabled child should participate in the same activities as nondisabled children to the "maximum extent appropriate." 20 U.S.C.A.

§ 1412(a)(5)(A). As we have explained, "[m]ainstreaming of handicapped children into regular school programs . . . is not only a laudable goal but is also a requirement of the Act." *DeVries v. Fairfax County Sch. Bd.*, 882 F.2d 876, 878 (4th Cir. 1989).

The district court agreed with the HO that the Lindamood-Bell placement was "highly restrictive" by IDEA standards. *M.S.*, No. 1:05cv1476, 2007 U.S. Dist. LEXIS 33735, at *49. Although we have never held that parental placements must meet the least restrictive environment requirement, *see Carter*, 950 F.2d at 160 (noting that "the [IDEA]'s preference for mainstreaming was aimed at preventing *schools* from segregating handicapped students from the general student body" and that "the school district ha[d] presented no evidence that the [IDEA's preference for mainstreaming] was meant to restrict *parental* options when the public schools fail to comply with the requirements of the [IDEA] (emphasis in original)), the district court's consideration of Lindamood-Bell's restrictive nature was proper because it considered the restrictive nature only as a factor in determining whether the placement was appropriate under the IDEA, not as a dispositive requirement. *M.S.*, No. 1:05cv1476, 2007 U.S. Dist. LEXIS 33735, at *49; *see also M.S ex rel. S.S. v. Bd. of Educ.*, 231 F.3d 96, 105 (2d Cir. 2000) (recognizing that "parents seeking an alternative placement may not be subject to the same mainstreaming requirements as a school board," but concluding that the IDEA's mainstreaming requirement "remains a consideration that bears upon a parent's choice of an alternative placement and may be considered by the hearing officer in determining whether the placement was appropriate").

### C.   Validity of 2005-2006 IEP

Finally, we consider whether the 2005-2006 IEP was adequate to provide M.S. with a FAPE. Pursuant to the HO's order, Fairfax County prepared an IEP for 2005-2006 that provided 12.75 hours per week of individual instruction, in

addition to 17.25 hours of the group and vocational instruction that the HO determined were important to M.S.'s education. The IEP also provided for additional one-on-one assistance as the educators deemed necessary. The district court found the IEP adequate to provide M.S. with a FAPE because it complied with the HO's order to provide "reliable and intensive" one-on-one education. *M.S.*, No. 1:05cv1476, 2007 U.S. Dist. LEXIS 33735, at *50.

The parents contend that the 12.75 hours per week of one-on-one instruction is insufficient to provide M.S. with a FAPE. Although trivial academic advancement will not produce a FAPE, *Hall ex rel. Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 636 (4th Cir. 1985), the IDEA does not require a perfect education, *MM ex rel. DM*, 303 F.3d at 526 ("The IDEA does not . . . require a school district to provide a disabled child with the best possible education."). The IEP must be "calculated to confer *some* educational benefit on a disabled child." *A.B. ex rel D.B. v. Lawson*, 354 F.3d 315, 319 (4th Cir. 2004) (internal quotation marks omitted) (emphasis in original). Under this standard, we cannot say the district court clearly erred in determining the 2005-2006 IEP adequate.

## III.

For the foregoing reasons, the judgment of the district court is affirmed in part and vacated and remanded in part with instructions for the district court to consider the Lindamood-Bell placement on a year-by-year basis and to determine whether any partial reimbursement is appropriate, consistent with this opinion.

*AFFIRMED IN PART AND VACATED AND
REMANDED WITH INSTRUCTIONS IN PART*